UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GLORIA JEAN EDWARDS,**

    **Plaintiff,**

v.                                                   **CASE NO. 8:08-CV-673-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Act.[1] The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). In determining whether substantial evidence supports the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 14).

Commissioner's decision, the court defers to the Commissioner's fact-finding and may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Id. However, the court does not defer to the Commissioner's interpretation of the law. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). If the Commissioner committed a legal error, the case must be remanded for application of the correct legal standard. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the Court is unable to determine from the Commissioner's decision whether the proper legal standards were applied, remand for clarification is required. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## **Background**

Plaintiff filed her application for DIB and SSI on October 24, 2004, alleging disability beginning on April 17, 2000. (T 12) Plaintiff amended the alleged onset date to May 1, 2003, at the administrative hearing on October 3, 2007. (T 12, 595)

Plaintiff's application was denied on February 28, 2005, and was denied upon reconsideration on July 8, 2005. (T 12) The ALJ held an administrative hearing on October 3, 2007. (Id.) On October 29, 2007, Plaintiff submitted additional medical records from Stewart Goldsmith, M.D. ("Dr. Goldsmith"), one of Plaintiff's treating physicians. (T 586-89) However, these records were not part of the administrative record before the ALJ.

The Appeals Council denied Plaintiff's request for review on February 6, 2008. (T 3) The Appeals Council acknowledged receiving additional evidence from Plaintiff, including Dr. Goldsmith's records and a new 2007 MRI of Plaintiff's left knee, and entered them into the administrative record. (T 3, 6) However, the Appeals Council found that the new records did "not provide a basis for changing the Administrative Law Judge's decision." (T 3-4)

2

At the time of the November 14, 2007 hearing, Plaintiff was forty-eight years old.[2] (T 596) Plaintiff has a high school education and past work experience as a customer service representative, assistant case manager, bank supervisor, and billing representative. (T 19, 104, 187-88) The ALJ found that Plaintiff had the following severe impairments: obesity, diabetes, carpal tunnel syndrome, and depression. (T 14)

In his decision, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2003, although Plaintiff had engaged in several unsuccessful work attempts in 2005 and 2006. (T 14) Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T 16) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with limitations, as discussed infra. (T 16-17) Although these limitations prevented Plaintiff from performing her past relevant work, the ALJ concluded, based on the Medical-Vocational Guidelines and the testimony of a vocational expert ("VE"), that Plaintiff could work as an arcade attendant, surveillance systems monitor, or scale attendant. (T 20) Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (T 21)

The medical evidence has been summarized in the ALJ's decision and will only be repeated here as necessary to address the issues presented.

## **Discussion**

Plaintiff argues the Appeals Council should have remanded her case to the ALJ based on the new evidence from Dr. Goldsmith (Dkt 20 at 8-11). She asks the court to remand the case under sentence four or sentence six of section 405(g). See 42 U.S.C. § 405(g). In addition, Plaintiff alleges

---

[2] Plaintiff was forty-four years old at the time of the amended alleged onset date. (T 19)

the Commissioner erred by failing to fully and adequately consider all of Plaintiff's impairments, individually or in combination (Dkt. 20 at 6).

**A.** Plaintiff contends that the Appeals Council erred by not remanding the case to the ALJ based on Dr. Goldsmith's evaluation. Specifically, Plaintiff asserts that Dr. Goldsmith's evaluation confirms and corroborates Plaintiff's left knee impairment and the Appeals Council abused its discretion in refusing to remand the case for consideration of this new evidence.

The Appeals Council must review a case if the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. See 20 C.F.R. 404.970(b). In deciding whether to review an ALJ's decision, the Appeals Council must consider new evidence the claimant submits if that evidence is material and relevant to the time period before the ALJ's decision. Id. Under sentence four of section 405(g), a district court may review whether the Appeals Council properly denied review. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1262 (11th Cir. 2007).[3] In doing so, the court considers whether the administrative record as a whole, including new evidence presented to the Appeals Council, contains substantial evidence to support the Commissioner's decision to deny benefits. Id.

Evidence from a claimant's treating physician is entitled to considerable weight unless there is good cause to reject it. Wiggins, 679 F.2d at 1389. In considering what weight to give physicians'

---

[3] Although Plaintiff argues alternatively that the Court should remand her case under sentence six of section 405(g) (Dkt. 20 at 11), sentence six review is appropriate only where new evidence, not previously made a part of the administrative record, is presented to the district court. Ingram, 496 F.3d at 1261. Because Plaintiff is disputing the weight given evidence already in the administrative record, rather than presenting new evidence to the district court, review under sentence four, not sentence six, is appropriate. Ingram, 496 F.3d at 1262. Under a sentence four remand, the claimant is not required to show good cause. Smith v. Soc. Sec. Admin., 272 Fed. Appx. 789, 802 (11th Cir. 2008).

opinions, the Commissioner considers six factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of relevant medical evidence to support the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialty of the treating physician; and (6) any other factors brought to the attention of the ALJ. Sanabria v. Comm'r of Soc. Sec., 303 Fed. App'x. 834, 838 (11th Cir. 2008)(unpublished). One-time examiners are not treating physicians, and therefore their opinions are not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Teresa Sisodia, M.D. ("Dr. Sisodia"), Plaintiff's primary physician at Tampa General Family Care Clinic, referred Plaintiff to Dr. Goldsmith, an orthopaedic specialist, for treatment of Plaintiff's left knee pain. (T 567, 588) The new evidence Plaintiff submitted from Dr. Goldsmith consists of one two-page evaluation Dr. Goldsmith made on September 18, 2007. (T 588-89) This was the first time Dr. Goldsmith examined Plaintiff; Plaintiff offers no medical records from later visits to Dr. Goldsmith. (Id.) The short length of Dr. Goldsmith's relationship with Plaintiff – lasting only two months within the relevant time period and consisting of only one examination – entitles his observation to little weight.

Dr. Goldsmith diagnosed Plaintiff with obesity, degenerative joint disease, and a tear in the medial meniscus of the left knee. (Id.) He based these diagnoses in part on radiological studies of Plaintiff's knee, noting that X-rays failed to demonstrate any evidence of lateral joint problems and that an MRI confirmed a "probable tear of the medial meniscus." (Id.) It is unclear from Dr. Goldsmith's notes which X-ray and MRI of Plaintiff's left knee he reviewed; however, it appears he is referring to the July 2007 MRI (T 570) and December 2004 X-ray (T 286-87) – the results of which are mentioned in Plaintiff's 2004 medical records from the Tampa General Hospital

5

emergency room – as these are the most recent radiological studies in the record. From his clinical examination, Dr. Goldsmith noted "tenderness along the left knee itself" and also that Plaintiff "demonstrate[d] significant discomfort on ambulation." (T 589)

The Appeals Council accepted Plaintiff's new evidence but denied review because, even in light of Dr. Goldsmith's evaluation, the Appeals Council found no error in the ALJ's decision because the evaluation was consistent with prior medical evidence considered by the ALJ. (T 3-4, 6, 588-89)

In considering Plaintiff's left knee impairment, the ALJ detailed the diagnoses and treatment notes of Plaintiff's treating physician, as well as the results of X-rays and MRIs. The ALJ explicitly referenced: Plaintiff's December 2004 X-ray, which is noted in emergency room records from Tampa General Hospital (T 286-87); an October 2006 MRI (T 167-68); Plaintiff's 2004 and 2007 visits to the emergency room due to knee pain (T 286-99, 573-74); and Dr. Sisodia's notes from examinations of Plaintiff's knee in 2006. (T 178) Although the ALJ noted that X-rays indicated degenerative joint disease in Plaintiff's left knee, he also concluded that examinations showed no swelling or erythema (T 287), and Plaintiff's gait was repeatedly normal. (T 18, 164, 178, 181, 193, 282) The ALJ also considered the statement of Dr. Robert Henderson, M.D. ("Dr. Henderson") that Plaintiff "had a tendency of someone who did not want to work." (T 19, 165) Based on this evidence, the ALJ concluded that the record did not support the severe functional limitations that Plaintiff described. (T 19)

Substantial evidence supports the ALJ's findings, even considering Dr. Goldsmith's evaluation. Although the record demonstrates Plaintiff frequently complained of knee pain, there is no evidence that such pain hampered her ability to work. As the ALJ noted in his opinion, Dr.

6

Henderson observed Plaintiff's gait was normal, her other treating physicians noted no deficiencies in left knee movement, and the examining physicians noted both movement and gait as normal. (T 164-65, 193) Plaintiff's resignations from Humana and Amscot explain she was unable to perform those jobs because of her inability to stand or type for extended periods (T 187-88), limitations that are consistent with the RFC that the ALJ assigned Plaintiff.

Further, the results of Plaintiff's 2007 MRI (T 570), referenced by Dr. Goldsmith, are similar to the results of Plaintiff's 2006 MRI (T 167-68). The reviewing radiologists, Scott Anderson, M.D. ("Dr. Anderson") in 2007 and David Germain, M.D. ("Dr. Germain") in 2006, both noted degenerative joint disease or osteoarthritis at the medial joint space of Plaintiff's left knee, with degeneration of the medial meniscus. Dr. Anderson in 2007 noted that the amount of edema has decreased since the prior exam. (T 570)

There is some difference between the two MRIs, in that Dr. Anderson diagnosed a probable chronic sprain of the medial collateral ligament, which Dr. Germain did not note. (T 167-68, 570) Similarly, Dr. Goldsmith, on examining the 2007 MRI, concluded that Plaintiff had a "probable tear of the medial meniscus," although Dr. Germain in 2006 noted "no frank tear." (T 167, 589) However, the only functional limitation that Dr. Goldsmith noted in his 2007 evaluation was Plaintiff's "significant discomfort" while walking. (T 589) Pain or discomfort while walking does not demonstrate that Plaintiff would be unable to perform the light work described by the ALJ, which includes having a sit/stand option and only occasionally performing postural activities. Furthermore, two of the jobs the ALJ found Plaintiff capable of performing are actually classified as sedentary, which means they require walking and standing only occasionally. See 20 C.F.R. § 404.1567(a).

In questioning the VE, the ALJ properly narrowed the range of jobs Plaintiff could perform, making sure the VE considered Plaintiff's hand pain, her need for a sit/stand option, and her mental limitations. (T 616-21) Dr. Goldsmith's evaluation is consistent with these findings. Even if Dr. Goldsmith indicated a decrease in Plaintiff's ability to walk, the jobs the ALJ lists (arcade attendant, surveillance systems monitor, and scale attendant) include a sit/stand option. Further, two of the jobs the ALJ identifies (surveillance systems monitory and scale attendant) are sedentary (T 20), therefore requiring little ambulation. Substantial evidence, therefore, supports the ALJ's overall disability determination.

Finally, there is no indication that Dr. Goldsmith's records would have effectively countered Dr. Henderson's statement about Plaintiff's credibility. The ALJ already considered evidence showing Plaintiff had consistently complained to physicians of left knee pain and had been diagnosed with degenerative joint disease; Dr. Goldsmith's records do not provide new evidence on this issue. Moreover, Dr. Goldsmith did not directly comment on Plaintiff's credibility or inclination to work. Accordingly, the Appeals Council did not err in failing to reverse the ALJ's decision based on Dr. Goldsmith's evaluation; its decision to affirm the ALJ's decision is not a basis for relief.

**B.** Plaintiff alleges that the ALJ failed to consider the combined effect of Plaintiff's impairments.

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ must explain whether the impairments are severe singularly and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe." Hudson v. Heckler, 755 F.2d 781, 785-86 n. 2.

Substantial evidence supports the ALJ's overall disability determination. The limitations the ALJ placed on Plaintiff's ability to work adequately reflect her various impairments. Due to Plaintiff's back and left knee pain, the ALJ: (1) limited Plaintiff to occasionally climbing, balancing, stooping, kneeling, crouching and crawling; and (2) found she must have a sit/stand option. (T 17) The ALJ noted treatment records from Tampa General Hospital, dating from February through December 2005, which showed Plaintiff experienced generalized musculoskeletal pain. (T 144-48, 239-46) Physicians at Tampa General Hospital diagnosed Plaintiff with degenerative joint disease of her lumbar discs, (T 144, T 264) and a January 2005 radiological study showed "hypertrophic spurring and disc space narrowing ... at [vertebrae] C-5–C-6 and C-6–C-7." (T 264) As discussed supra, Plaintiff was also diagnosed with degenerative joint disease in her left knee. (T 167-68, 570) Plaintiff continued to complain of intermittent musculoskeletal pain in her back and knee throughout 2006 and 2007, rating the pain between 5 and 8 on the pain scale. (T 164-65, 181, 178, 563, 567-70, 573-74) Despite this pain, her gait, as the ALJ noted, was generally normal, (T 18, 164, 178, 181, 193, 282) and there were no signs of tenderness over the shoulders, hips, and ankles. (T 18, 281) On May 4, 2007, Dr. Anderson wrote that a bone densitometry scan revealed her lumbar spine was stable compared to a prior study. (T 571) Although in July 2005 state consultant Ronald Kline, M.D. ("Dr. Kline") found Plaintiff could perform medium work (T 193-96), the ALJ stated that, to avoid exacerbations of pain, Plaintiff should be limited in her postural activities and have a sit/stand option. (T 19) These limitations are supported by substantial evidence.

Due to Plaintiff's carpal tunnel syndrome, the ALJ found she could not perform activities involving repetitive use of her hands for more than four hours in an eight-hour workday or more than 30 minutes out of any given hour. (T 17, 19) Indeed, the record shows that only prolonged typing

or hand manipulation caused Plaintiff debilitating pain. In 2007, Plaintiff resigned from her job at Humana after an uncharacteristically long day of typing caused her to visit the Tampa General Hospital emergency room with acute pain in her wrists and extremities. (T 149-60, 187, 615) Although this evidence shows Plaintiff could not use a computer for an entire workday without suffering extreme pain, Plaintiff testified that she could write and type on an occasional basis. (T 606, 608) Therefore, the ALJ properly considered Plaintiff's carpal tunnel syndrome in limiting the repetitive use of Plaintiff's hands.

Due to Plaintiff's depression symptoms, the ALJ limited her to simple, routine tasks. (T 17) The ALJ discussed the opinions of examining physician Walter Afield, M.D. ("Dr. Afield") (T 189-91) and the state consultants, Martha Putney, Ph.D. ("Dr. Putney") (T 200-213) and Robert Stainback, Ph.D. ("Dr. Stainback") (T 265-278), regarding Plaintiff's mental limitations. (T 19) Dr. Afield diagnosed Plaintiff with "depressive disorder due to inability to work and physical pain," and concluded she had a Global Assessment of Functioning ("GAF") score of 50, which indicates "serious symptoms or any serious limitation in school, occupation, or social functioning." (T 19, 190) However, as the ALJ noted, Dr. Afield examined Plaintiff only once and appears to have based the GAF score on Plaintiff's subjective complaints. (T 19) Dr. Afield noted no functional limitations or objective tests which would support his GAF score, finding only that Plaintiff is "anxious over the future," and that "this is a very sad case." (T 190) Further, although a few treatment records note Plaintiff as feeling depressed or anxious, Plaintiff's records do not show any regular mental health treatment. (T 178, 239, 561) The state consultants, Drs. Putney and Stainback, found only minimal limitations of Plaintiff's functional abilities. (T 19, 212, 277) Thus, the ALJ properly considered Plaintiff's depression in finding that Plaintiff was capable of performing

simple, routine tasks.

The ALJ considered Plaintiff's diabetes a severe impairment, although the ALJ found it to be adequately controlled by medication. (T 14, 18) Moreover, he found Plaintiff's claim of diabetic neuropathy unsupported by the record. (Id.) Dr. Sisodia prescribed Plaintiff Neurontin for neuropathy in her hands and feet, indicating Plaintiff should take one tablet at night. (T 240-41) Yet, on the same visit, Dr. Sisodia allowed Plaintiff to test her blood sugar less frequently, which indicated her diabetes was in good control. (Id.) Also, Dr. Henderson noted in February 2006 that Plaintiff complained of numbness in her hands, and he listed "possible diabetic neuropathy" among his diagnostic impressions. (T 164) Nevertheless, an August 2006 medication list indicates Plaintiff stopped using Neurontin in March 2006 (T 183); her medical records after that date, including her March 2006 follow-up visit with Dr. Henderson, do not note problems with neuropathy. (T 149-60, 163, 172-82) Plaintiff's later medical records also do not demonstrate any problems with controlling her blood sugar. (T 149-60, 169-82, 560-69, 573-74, 588-89) Thus, substantial evidence supports the ALJ's finding that Plaintiff's diabetes can be controlled with medication and that she does not suffer from diabetic neuropathy.

Finally, the language in the ALJ's decision referring to the combination of impairments standard expressly indicates that the ALJ properly considered this issue (T 16), see Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986), including the effect of obesity on Plaintiff's impairments.

## **Conclusion**

The Appeals Council did not err in denying review of Plaintiff's case because substantial evidence supports the ALJ's findings that Plaintiff is not disabled under the Act.

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE** and **ORDERED** in Tampa, Florida on this 17th day of August, 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge